### WOLF & MARKS v. LEWIS KAHN.

1. BUSINESS SIGN. *Not conclusive as to ownership of goods. Section 1300, Code 1880.*

   The name on a business sign on the front of a house in which a mercantile business is conducted does not *per se* fix conclusively the ownership of the goods in him whose name appears on the sign, and make them liable for his debts, under ¿ 1300 of the Code of 1880, which provides that "if any person shall transact business as a trader or otherwise, with the addition of the words 'agent,' 'factor,' 'and Company,' or 'and Co.,' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action used or acquired in such business shall, as to the creditors of any such person, be liable for his debts, and be in all respects treated in favor of his creditors, as his property."

2. SAME. *Business conducted by one for secret benefit of another. Liability of goods. Section 1300, Code 1880. Case in judgment.*

   M., a merchant, sold, conveyed, and delivered possession of his stock of goods and storehouse to his clerk, L. The conveyance was recorded two days afterward. The business was continued in the same storehouse and under the same sign. It was conducted by M. and L. afterward just as before the sale, apparently, and there was nothing to indicate that the former clerk had become owner and the former owner clerk, but, so far as the public could know from appearances, M. was still the owner of the business and L. still his clerk. The fact of the sale and transfer was known to only two persons besides the parties, and five days after it took place certain creditors of M., being in ignorance thereof, attached the goods as his. *Held*, upon these facts, and admitting the validity of the transfer of the goods, that M. was transacting business in his own name for the secret benefit of L., and the goods were liable for the debts of the former under the statute above quoted.

APPEAL from the Circuit Court of Amite County.

HON. J. B. CHRISMAN, Judge.

On the 15th of January, 1885, Wolf & Marks sued out a writ of attachment against Max Kahn, and caused the same to be levied on a certain quantity of goods and merchandise. On the 26th of the same month Lewis Kahn filed an affidavit claiming the property attached as his. The plaintiffs recovered a judgment against the defendant, Max Kahn, and then joined issue with the claimant, Lewis Kahn, to test his claim to the attached property. Upon this issue the jury found a verdict for the claimant, and a judgment was rendered accordingly. Whereupon the plaintiffs appealed to this court. A statement of the facts established by the evidence and the effect of an instruction refused by the court below will be found in the opinion of this court.

*D. C. Bramlett* and *T. McKnight,* for the appellants.

We insist that § 1300 of the Code of 1880 conclusively fixes the ownership of a mercantile establishment to be in the person whose sign is exhibited at the place where the business is conducted. See *Gumbel* v. *Koon,* 59 Miss. 264, especially 267.

The claim interposed by appellee is but an assertion of a secret claim to the property in controversy as against appellants, creditors of " Max Kahn," who was held out to the world as the owner of it by appellee. If appellee could conduct the business for five days with impunity under the sign of " Max Kahn," he could as well do so for five years. If appellee's pretended purchase was in good faith and for value, which we reluctantly admit, even for the sake of argument, yet the sale was incomplete without exchange of or taking away the sign of Max Kahn. This was as essential to the consummation of the sale as the delivery of the property, or that the contract should be in writing.

*C. P. Neilson,* for the appellee.

We insist that § 1300 of the Code of 1880 does not apply in this case. In its letter and spirit it relates to a person " transacting business." It is not contended here nor in the court below that Max Kahn was " transacting the business " for himself or for any one else. Nor does the case of *Gumbel* v. *Koon,* 59 Miss. 264,

apply.    The facts of this case are different from those in that case.

Max Kahn had ceased to transact business on the 10th of January.    He had no place of business.    The transfer of ownership had been made by deed—executed on the 10th and recorded on the 12th—he did not *seem* to be the owner from any "dealings" with the property.    The sign, and the sign alone, plaintiff relies on to fix ownership in Max Kahn, and contends that is "conclusive." The latter clause of the last sentence of the opinion in *Gumbel* v. *Koon, supra,* if taken as an abstract proposition of law, sustains that view.    But we submit that this enunciation of law is to be construed and confined to the case before the court.

COOPER, C. J., delivered the opinion of the court.

The court rightly refused to charge the jury that the fact alone that Lewis Kahn carried on business in a store having on its front the name of Max Kahn rendered the goods liable to be taken in execution by the creditors of Max.    It is a mistake to suppose that the effect of § 1300 of the Code of 1880 is to fix the ownership of property in the person whose name appears at the place of business, when the sign has no connection with the business and is not intended or used as an advertisement thereof.    The purpose of the statute is to fix the ownership of the goods in him by whom the business is transacted, and in doing this it declares that though by the sign under which the business is conducted it may be suggested that some other person is interested therein, his claim or interest shall not be recognized as against the creditors of the person by whom the business is transacted, unless the name of such other person is disclosed on the sign in letters easy to be read. Where the sign contains the name of the person by whom the business is transacted without any other name appearing thereon, or where the addition consists of the words, "agent," "Co.," or "Company," or words of like import, then the statute conclusively fixes the property in him alone who transacts the business and whose name appears on the sign.    It was under such circumstances that the case of *Gumbel* v. *Koon,* 59 Miss. 264, was decided, and

the language of the opinion is to be considered with reference to the facts before the court. It was not intended to be decided nor was it decided in that case that if one transacts business in his own name in a building on which appears a sign wholly disconnected from the business and having no reference thereto, the property used or acquired in the business becomes the property of him whose name appears on the sign. The language of that opinion, delivered by the writer, is subject to the criticism that in the last sentence the word manager is used as the equivalent of "the person transacting the business in his own name."

But on the facts testified to by the claimant himself and admitting the *bonâ fides* of the transfer of the goods, we are of opinion that the verdict of the jury is manifestly wrong. The facts are that Max Kahn was the owner of the goods and the storehouse in which the business was conducted until three o'clock on the evening of Saturday the 10th of January, 1885. At that hour on that day Max sold the entire stock of goods and the storehouse to his clerk, Lewis Kahn, and executed a deed conveying the same to him, which deed was recorded on Monday, the 12th. Possession was delivered to the vendee at the time of the execution of the deed, and from Saturday, the 10th, to Thursday, the 15th, the business was conducted just as it had been before, so far as the public could know from appearances. The seller was in and about the store just as he had been when owner; he who had been up to that hour clerk then became owner, but the knowledge of this fact was confined to Max, Lewis, their attorney, and to one other person to whom Lewis had communicated the fact of the sale. The sign of Max Kahn remained over the door; his revenue and privilege licenses remained posted in the room; Lewis Kahn, the purchaser, who had been the clerk, and Max Kahn, the clerk, who had been the owner, were in and about the store just as they always had been. Every appearance that would lead to the belief on the part of the public that Max was transacting the business as before was presented, and nothing was done or said from which an inference could be drawn that he had retired from business and his late clerk had embarked in it. True, Lewis and Max knew that

62 MISS.—52

Lewis was to have the proceeds of sale, but no one else knew it. Unless one can transact business in his own name secretly, Lewis was not so engaged. If every man, woman, and child who had been familiar with the business and who entered the store after the sale had been interrogated on leaving to answer who was conducting or transacting the business then being carried on, each one would have replied "Max Kahn," and would have been warranted in making such reply. Under such circumstances the business was transacted by Max in his own name for the secret benefit of Lewis, and the goods were, as between Lewis and the creditors of Max, to be held and treated as the goods of Max.

*The judgment is reversed.*