The FIRST NATIONAL BANK OF JUNEAU, a corporation, Plaintiff, v. Jack O. MARTIN, Defendant, Thomas O. Paddock, Third Party Defendant.

No. 7222–A.

District Court, Alaska. First Division, Nome.

May 28, 1956.

[8] Hauptman v. United States, 9 Cir., 1930, 43 F.2d 86.

[9] 28 U.S.C. § 2111 provides: "On the hearing of any appeal \* \* \* the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

F. M. Doogan, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

No appearance for defendant.

Joseph A. McLean, Juneau, Alaska for third party defendant.

HODGE, District Judge.

This case was submitted for decision upon briefs and a stipulation of facts, as follows: On November 25, 1953, defendant Martin gave his promissory note for $1,500 to third party defendant Paddock payable on February 25, 1954, upon which nothing has been paid to date; on January 3, 1955, complaint was filed in this case by plaintiff First National Bank against defendant Martin for collection of certain promissory notes; on February 5, 1955, defendant Martin assigned $1,500 from the proceeds of his share of the partnership estate of Cliff Joseph, deceased, and Jack O. Martin, to the third party defendant Paddock as security for the note dated November, 1953; on March 8, 1955, Thomas Cashen, Administrator of such partnership estate, accepted the assignment; on August 2, 1955, and again on February 28, 1956, the plaintiff Bank served a writ of attachment issued out of this cause upon Thomas Cashen, Administrator; on March 1, 1956, the Administrator filed herein his Answer as Garnishee, showing distribution ordered by the Probate Court to Jack O. Martin, surviving partner of the co-partnership, of $2,507.70, and thereafter paid $1,500 claimed by plaintiff under the writs of attachment and by the third party defendant by virtue of his assignment, into the registry of this court, and $1,-007.70 to the United States Marshal under the writ of at-

tachment; personal service of summons outside the Territory of Alaska was made upon defendant Martin, and by virtue of the writ of attachment the court has jurisdiction of the subject matter herein; no notice of assignment of an account or an account receivable as defined in Ch. 90, S.L.A. 1951, was filed in the office of the Auditor of the Territory. It is not claimed that plaintiff had any actual notice of the assignment.

By such stipulation the questions to be decided herein are: (1) Is the assignment of $1,500 from Jack O. Martin to T. O. Paddock an assignment of an account or an account receivable as defined by Ch. 90, S.L.A.1951? (2) Does the lien of the writs of attachment dated August 2, 1955, and February 28, 1956, have priority over the assignment dated February 5, 1955, and accepted March 8, 1955, where no notice of assignment of accounts receivable as required by Ch. 90, S.L.A.1951, has been filed?

▉▉ It is apparently conceded by plaintiff that the assignment mentioned would be valid and superior to the rights of plaintiff under its attachment except for the provisions of the filing statute mentioned, such assignment being prior in time to the attachment. 4 Am.Jur., Assignments, 318, Sec. 112; 5 Am.Jur., Attachment and Garnishment, 114, Sec. 864. There also appears no question but that a vested interest in a decedent's estate is assignable, including a future or contingent estate, if the person to take it is certain and if coupled with an interest. 4 Am.Jur., Assignments, 245, Sec. 19; 6 C.J.S., Assignments, §§ 8, 9, 11, p. 1054.

▉ Only certain kinds of assignments are generally provided by statute to be filed or recorded in order to render them valid as against claims of third persons; otherwise recording statutes are inapplicable to assignments. 4 Am. Jur., Assignments, 300, Sec. 88; 6 C.J.S., Assignments, § 57, p. 1100. In the absence of statute assignments of choses in action are not required to be recorded or filed.

Crump v. Hill, 5 Cir., 105 F.2d 124, 124 A.L.R. 165. It is particularly held that the assignment of an interest in an estate is valid against an attaching creditor in the absence of a statute requiring filing of an ordinary chose in action. Chatterton v. Clayton, 150 Kan. 525, 95 P.2d 340; In re Wasself, D.C., 51 F.2d 309. The answer to this problem must depend then upon an interpretation of the Alaska filing statute; and the answer to the second question depends upon the answer to the first.

The pertinent parts of the statute in question are as follows:

> (Title) An Act "Relating to the assignment of accounts or accounts receivable, defining terms, establishing validity as to creditors and subsequent assignees, providing for filing of notice * * *.
>
> "Section 1. Terms Defined. Definitions. In this act: (1) 'Account' or 'Account Receivable' means an open book account, mutual account, or account stated, due or to become due, and not represented by a judgment, note, draft, acceptance, or other similar instrument for the payment of money; * * *.
>
> "(2) 'Assignment' shall include any transfer, pledge, mortgage or sale of an account.
> * * * * * * * *
>
> "Section 2. Validity as to Creditors and Subsequent Assignees—Effect of Notice—Rights of Unnotified Debtor. Subject to the provisions of Section 3 of this act, a written assignment, signed by the assignor, of an account for value, shall be valid as against, and shall have priority as to such account, over present and future creditors (excepting creditors having existing specific liens on the account when assigned) of the assignor and subsequent assignees of such account * * *.

"Section 3. Notice, Filing and Form. No assignment of an account shall be valid as against present or future creditors of the assignor, or as against a subsequent assignee of such account, without knowledge of such assignment, unless such assignment shall be in writing and be signed by the assignor, and unless there shall be on file in the office of the filing officer, at the time of the making of such assignment or within ten days thereafter, an effective and uncancelled notice signed by the assignor and the assignee, in substantially the following form * * *."

No decisions are cited to the Court by either party touching upon the interpretation of this statute as contended by them, and none are found upon careful research. Plaintiff contends that the statute applies to the assignment in question and, no notice of the assignment having been filed as required by the Act, the assignment is void as to the plaintiff creditor. No authority is submitted in support of this contention except that by comparison with cases interpreting chattel mortgage filing statutes, this statute "means what it says" and should be so construed, with which I am in accord. Defendant simply contends that the statute obviously does not apply and therefore that the assignment is good against such attaching creditor. The question is then one of first impression, at least in this jurisdiction.

The language of the assignment is as follows:

"For value received I hereby assign to T. O. Paddock the sum of $1,500.00 to be paid from the proceeds of my share of the partnership of Cliff Joseph and Jack O. Martin, and due me from the estate of Cliff Joseph, deceased.

"This Assignment is given as security for my note dated November, 1953, for the sum of $1,-500.00 payable to T. O. Paddock."

 . Does this instrument represent the assignment of an "account" or "account receivable" as defined by the Act? It is not an account receivable in the ordinary and commercial sense of an amount owing by one "person to another on an open account, which is obviously intended by the Act. 1 C.J.S., Account (Definition) p. 573. Neither is it an "open book account" defined by the statute within the meaning of such term as defined in 1 C.J.S., Account, p. 574 and Bouvier's Law Dictionary, Rawle's Third Revision, which is one in which some item of contract is not settled by the parties, or where there have been running or concurrent dealings between the parties and the account is kept open with expectations of future dealings. Certainly it is not a "mutual" account. An "account stated" refers to the relation of debtor and creditor and presumes the existence of a previous debtor-creditor relationship. It is an agreement that the balance and all items of an account representing the previous monetary transactions of the parties thereto are correct, together with a promise to pay such balance; or an agreed balance of accounts, which has been examined and accepted by the parties. 1 C.J.S., Account Stated, § 1, p. 693; Bouvier's Law Dictionary, Rawle's Third Revision. An account stated cannot be the origin of a debt. It comes into being after the parties, through a course of monetary transactions, have created a debt. Edwards v. Hoevet, Or., 200 P.2d 955, 960. Under the law of Alaska a partnership is terminated by the death of a partner except for winding up the partnership affairs, in this case by distribution of the value of the interest of the surviving partner in the course of probate. Secs. 28–1–59, 60 and 61–6–11, 12, A.C.L.A.1949. There was then no debt or account stated owing by one partner to another arising out of the partnership at the time of this assignment. The estate interest herein assigned does not in my opinion come within any of the above definitions, or within the meaning of the statute relating to accounts receivable.

A further question to consider is whether or not this instrument comes within the exclusion of the statute of an account or debt "due or to become due, and not represented by a judgment." In this connection it should be noted from the pleadings that the garnishee filed an answer to the first attachment showing his appointment and qualification as administrator of the partnership estate of Joseph and Martin; that in his capacity as such administrator he had in his possession moneys in the total sum of $2,118.56 belonging to the estate, but that the administration was still in progress and that until the probate court enters its final decree of distribution, such moneys are in the custody of the law and are thus not subject to attachment or garnishment, under the provisions of Sec. 55–9–107, A.C.L.A.1949. Plaintiff apparently conceded to the correctness of this position, abandoned the writ and issued the second writ of attachment, which was served upon the garnishee on February 28, 1956. On the day previous to such service a decree had been entered by the probate court settling the administration of the partnership estate and ordering distribution of the funds of said estate to Jack O. Martin, as noted above.

An assignee takes the subject of the assignment with all rights thereto possessed by the assignor. In this case the assignment became effective as soon as the actual estate or interest of Martin came into possession of the assignee, or when the assignor became entitled to such distributive share, which was the date that such distribution was ordered by the probate court. 4 Am.Jur., 304, Sec. 95; 6 C.J.S., Assignments, §§ 9, 11, 12b, .p. 1055. It is apparent therefore that the first attachment must be disregarded and the matter of the priority of the claims determined by the circumstances existing at the time of the second writ, at which time the estate interest of Martin assigned to Paddock was represented by the decree of distribution.

Under the law of Alaska, Commissioners acting as probate judges have exclusive original jurisdiction

324

of probate matters, including the administration of partnership estates. Decker v. Decker, 3 Alaska 121. Although of limited jurisdiction, the judgments and decrees of said court are as conclusive and are entitled to the same presumptions and effect as the judgments of any other general court. 14 Am.Jur., Courts, 252, Sec. 8; In re Jackson's Estate, 217 Iowa 1046, 252 N.W. 775, 91 A.L.R. 937. The conclusion is manifest that at the time of the writ of attachment relied upon by plaintiff the amount of the distributive share of Martin in the partnership estate assigned by him was represented by a judgment, and is therefore not within the purview of the statute.

An acceptance by the assignee, either actual or constructive, is necessary, but a subsequent ratification is sufficient. 4 Am.Jur., Assignments, 299, Sec. 86; 6 C.J.S., Assignments, § 73, p. 1124. By his second answer the garnishee recites the previous acceptance by him of the assignment as Administrator of the partnership estate and in effect ratifies such.

Judgment may be entered in favor of the third party defendant and against the defendant Jack O. Martin for the sum of $1,500.00, and the Clerk of Court authorized and directed to pay over said sum deposited in the registry of the court to the third party defendant or his attorney. Judgment may also be entered in favor of the plaintiff and against the defendant Martin for the sum of $1,007.70 attached under plaintiff's writ, in the hands of the United States Marshal. By reason of the fact that any personal judgment against Martin must be limited on account of substituted service to the specific funds in the jurisdiction of the court, and also by reason of mutual relief, each party may bear his own costs and attorney's fee.